[Sac. No. 4552. In Bank.—January 25, 1932.]

LOUIS P. JOERGER, Respondent, v. MT. SHASTA' POWER CORPORATION (a Corporation) et al., Appellants.

Thomas J. Straub, W. R. Dunn, Orr M. Chenoweth and Garret W. McEnerney for Petitioners.

Jesse W. Carter and Annette Abbott Adams for Respondent.

Chickering & Gregory, *Amici Curiae.*

THE COURT. — This is an application for a writ of *supersedeas* to stay the alleged threatened enforcement of a

preliminary injunction pending an appeal from the injunctive order.

T. 36 N. R. 4 E.

The parcels of land designated on the accompanying diagram as A, B, C, D and E are riparian to Hat Creek, a natural stream in Shasta County. The course of the stream is shown by the meandering parallel lines. The plaintiff Joerger is and has been since July 7, 1920, the owner, including the riparian right incident thereto, of the forty acres designated as parcel D. He is also the owner of parcels B and C except the water rights incident thereto, which were conveyed away by his predecessor in interest. The defendant Red River Lumber Company, a private corporation, is the owner of parcels A and E and the water rights of parcels B and C. Parcels A and E were acquired by the power company in October, 1907. On November 1, 1922, the power company conveyed parcels A and E, and the water rights on parcels B and C, to the lumber company, and at

the same time took back a lease from the lumber company for the purpose of constructing a power plant and the utilization of the waters of Hat Creek for the development of hydroelectric power. The terms of the lease need not be further noted, except to say that the lease was executed with the consent and approval of the Railroad Commission and that pursuant thereto the power plant to be constructed and operated was not to be deemed a public utility. The power plant was constructed by the defendants during the years 1920 and 1921 and the development of power began on September 28, 1921. For the purposes of this proceeding it will be taken for granted that the waters of said creek have not been devoted to a public use.

Hat Creek has a constant uniform flow northerly throughout the year. The diversion works of the power company consist of a dam and weir constructed at point F on the riparian lands of the defendants, and a flume or aqueduct shown by the heavy black line running from point F to point G. This aqueduct is entirely on the west side of the creek and is on the defendants' riparian lands, except as to a very small portion thereof, as disclosed by the diagram, which is deemed immaterial for the purposes of this proceeding. By this dam and aqueduct substantially all of the water of Hat Creek is impounded and diverted from the main channel of the creek to the power-house of the power company located at point G where the water is returned to the natural channel. This point, it is observed, is on the riparian lands of the defendants and is south or upstream from the northerly boundary of the plaintiff's tract. The diversion continued from 1921 until the effective date of the injunction herein, to wit, February 6, 1931.

The action out of which the present proceeding arose was commenced on September 29, 1921. As originally framed it was an action to quiet the title of the plaintiff in and to certain lands and water rights and for damages for interference therewith. On the trial the defendants claimed to be the owners of all of the riparian rights on the stream on both sides thereof from the point of diversion to the point of return. The court found in favor of the defendant on that issue, but awarded to the plaintiff, on the verdict of the jury, the sum of $40,000 as damages to the plaintiff's rights under certain issues in the case and awarded to him a

designated quantity of water as an appropriator. On appeal by both parties the judgment was reversed in part and affirmed in part. It was reversed in so far as it purported to determine that the defendants were the owners of all of the riparian rights on both sides of the stream from the point of diversion to the point of return, and was affirmed in other respects, including the allowance of $40,000 damages and the award of the designated quantity of water. (*Joerger* v. *Pacific Gas & Electric Co.*, 207 Cal. 8 [276 Pac. 1017].) Following the order of affirmance the plaintiff was paid the sum of $40,000 with interest. The order of reversal resulted in a determination that the defendants were riparian owners on both sides of the stream except as to the forty acres constituting parcel D. The contact of parcel D on the east side of the stream is to the extent of about 250 feet and is noted as point H. The result of the reversal was that the plaintiff's entire forty-acre tract, parcel D, was declared to be riparian to said stream by reason of the 250-foot contact.

After the going down of the *remittitur* the plaintiff, on September 16, 1930, and February 4, 1931, filed supplementary pleadings alleging his riparian ownership of parcel D, and prayed for an injunction to restrain the defendants from taking or using any of the water of the stream by means of the power plant enterprise. On a hearing on an order to show cause the court issued a temporary injunction restraining the defendants "from continuing to divert any of the waters of Hat Creek from the natural channel of said stream, where the same passes through, over, along, by, upon and past" the forty acres of plaintiff's riparian land. The appeal from the order of injunction is now pending and undetermined. The present proceeding is directed against the operation of the temporary injunction pending the appeal.

A rehearing was granted herein because of a statement of fact appearing in our former opinion which, the defendants claimed, showed a misconception of the factual situation, and had an important bearing on their legal status, and also in order that further consideration might be given to their contention that the injunctive order is mandatory in character.

The statement of fact complained of was the statement that "defendants actually use the water at their power plant, which is situated on Hat Creek at a point below the lands of plaintiff. At this point defendants return substantially all of the diverted waters back into the natural channel of Hat Creek". While this statement was true in so far as it represented that the power plant was operated and the water returned to the creek at a point below the riparian contact of the plaintiff's land with the creek, the statement gave rise to a construction of the rights of the parties which did not truly exist, as will presently more fully appear.

From the diagram it is disclosed that the defendants are the owners of all of the lands riparian to the creek on the west side thereof, from the point of diversion to the point of return; that the defendants are the owners of all of the riparian rights on the east side of the stream from the point of diversion to the point of return, except on parcel D; that the riparian rights attach to parcel D by reason of the fact that the east bank of the stream juts into said parcel to the extent of 250 feet at point H; that the plaintiff owns parcels B and C stripped of the riparian rights incident thereto; that the defendants own all of the riparian rights on the stream in parcels A, B and C; that the point of diversion, F, is on the defendants' riparian land, and that the point of return, G, is wholly on parcel A, which, with parcels B and C, constitute the forty acres opposite to the forty-acre parcel, D, owned by the plaintiff. If the plaintiff owned the riparian rights on parcels B and C equally with his rights on parcel D, the usual and ordinary situation of opposite riparian ownership would be presented. The fact that parcels B and C have been stripped of their riparian rights, now owned by the defendants, would not change the situation of the parties as to their opposite riparian proprietorship as to parcels A and D. In a true sense they are opposite riparian owners and their legal status must be determined in view of that fact.

It is further apparent from the record before us, and is not disputed, that in acquiring the lands riparian to the creek the defendants endeavored to acquire, and acted under the belief that they had acquired, all of the lands riparian to the creek on both sides from the point of diversion to the

point of return. It was not until November, 1924, that the plaintiff first asserted in this action a particular riparian right on his forty acres, parcel D, but the fact with reference thereto was uncertain and was and continued to be decided contrary to his contention until the order of reversal by this court on April 9, 1929. During the years intervening between the construction of the power plant and its first operation in 1921 and the issuance of the temporary injunction complained of, on February 6, 1931, the defendants used practically the entire flow of the stream upon their riparian land, parcel A, which is opposite to the riparian tract of the plaintiff. Prior to 1921 the plaintiff made no riparian use of the waters of the stream on his forty acres, parcel D. Since 1924 he has contended for a riparian right as an incident to his ownership of said forty-acre tract, but he has not in this proceeding shown any substantial beneficial use to which he could have put the water on his forty acres if the defendants had not used the same on their opposite riparian tract. ■ It appears to be well established that as between opposite riparian proprietors, the owner on one side of the stream has the right to take the entire flow of the stream unless and until the opposite owner has use for the same. If only one can use it, his use of the whole works no harm to his opposite owner and is not an adverse use. If both have use for the water and a controversy arises as to an excessive use by one as against the other the remedy is a division or apportionment of the water in accordance with the principles of equity, taking into consideration the reasonable needs of both. (*Dyer* v. *Cranston Co.*, 22 R. I. 506 [48 Atl. 791]; Gould on Waters, 3d ed., sec. 207; *Warren* v. *Westbrook Mfg. Co.*, 88 Me. 58 [51 Am. St. Rep. 372, 35 L. R. A. 388, 33 Atl. 665]; *Pratt* v. *Lamson*, 84 Mass. (2 Allen) 275.) For cases in this state in harmony with the same rules, see *Half Moon Bay Land Co.* v. *Cowell*, 173 Cal. 543 [160 Pac. 675]; *Pabst* v. *Finmand*, 190 Cal. 124 [211 Pac. 11]; *Oliver* v. *Robnett*, 190 Cal. 51 [210 Pac. 408]; *Anaheim W. Co.* v. *Semi-Tropic W. Co.*, 64 Cal. 185 [30 Pac. 623]; *Rose* v. *Mesmer*, 142 Cal. 323 [75 Pac. 905]; 25 Cal. Jur., p. 1135 et seq.

■ With the foregoing rules in mind we have a situation where the defendants are making a riparian use of the waters of the stream, to wit, the generation of electricity

by water power. .(*Mentone Irr. Co.* v. *Redlands etc. Co.,* 155 Cal. 323 [17 Ann. Cas. 1222, 22 L. R. A. (N. S.) 382, 100 Pac. 1082] ; *Fall River Irr. Dist.* v. *Mt. Shasta P. Corp.,* 202 Cal. 56, 72 [56 A. L. R. 264, 269 Pac. 444].) This use is made on the opposite riparian lands of the defendants. The water is returned to the stream above the lower boundary of the plaintiff's riparian tract. As between these opposite riparian tracts, the rights of the owners are correlative and reciprocal, with the right in each to use all of the water so long as the other has no use for it. The fact that the other demands a right to use it, would not result in the first user being entirely cut off from any use, but would require an equitable division or apportionment. We therefore conclude that the defendants, as opposite riparian owners, are lawfully exercising a riparian right on their own property. In so doing they are not guilty of trespass. If they are guilty of anything, it is an excessive or unreasonable use of a lawfully exercised and exercisable right.

This brings us to the consideration of the vital phase of the present controversy, viz., the nature of the injunctive order. If it be mandatory in character it is conceded that it is automatically stayed by the appeal therefrom. (See *Baar* v. *Smith,* 201 Cal. 87 [255 Pac. 827] ; *United States* v. *Berg,* 202 Cal. 10 [258 Pac. 942] ; *Ohaver* v. *Fenech,* 206 Cal. 118 [273 Pac. 555].)

After further consideration of the question we are persuaded that the injunctive order issued herein has the essential characteristics of a mandatory injunction. The defendants are and always have been lawfully in possession of their property. In that possession they are engaging in a lawful use thereof. They are not trespassing upon any of the rights of the plaintiff. They are not maintaining a nuisance. They are entitled in any event to their proportional share of the water by reason of the fact that their rights and the rights of the plaintiff are correlative, co-ordinate and in common as to said opposite riparian lands. These rights may be exercised by either party subject to the equitable power of the court to apportion the use of the water as between them. The effect of the order, if enforced, would be to disturb a lawful use of property lawfully in possession, and to dispossess the defendants of the use of any of the waters of the stream. It would thus compel the

surrender of the lawful possession of real property and would amount to affirmative relief as contemplated by the decisions. (*United Railroad* v. *Superior Court,* 172 Cal. 80 [155 Pac. 463]; *Ohaver* v. *Fenech, supra.*)

█ The plaintiff insists that the use by the defendants of the water on their opposite riparian lands is unlawful because of the fact that the point of diversion is south of the south boundary of the plaintiff's riparian tract, and the point of return is north of the point of contact of parcel D with the stream. But since the water is used on the defendant's riparian lands, it would appear to be of no consequence to the plaintiff where the point of diversion may be so long as the water is returned on the side of the stream opposite to him and on the opposite riparian tract. (See *Fall River Irr. Dist.* v. *Mt. Shasta P. Corp.,* 202 Cal. 56 [56 A. L. R. 264, 259 Pac. 444].) The plaintiff is in no sense an intervening riparian owner on the west side of the stream. The fact that he may be deemed an intervening riparian owner on the east side of the stream would have no bearing on his rights in this proceeding for the reason that whatever rights he may have as an intervening riparian owner on that side of the stream are not involved herein. On the west side the defendants are the owners of all the riparian land from the dam to the power-house and their rights are determinable in view of that fact, together with the fact, as stated, that the point of use and return of the waters of the stream is on the opposite riparian tract.

Our conclusion that the injunctive order is mandatory in character should be all-sufficient for the purposes of this proceeding. Its operation is stayed as a matter of law pending the appeal. It cannot be assumed that enforcement thereof will be attempted in the face of its automatic stay as herein determined. If such attempt be made this application may be renewed.

Other points are made by the parties, but in the light of what has been said it is unnecessary to pass upon them. In the main they are involved in the merits of the appeal from the order.

The application is denied without prejudice.

Rehearing denied.