[Civ. No. 4264. Third Appellate District.—June 4, 1932.]

MERTON CRUM et al., Respondents, v. MT. SHASTA' POWER CORPORATION (a Corporation), Appellant.

William B. Bosley, Thomas J. Straub, Athearn, Chandler & Farmer, Frank R. Devlin, Chenoweth & Leininger and Jones & Dahl for Appellant.

Jesse W. Carter, Arthur C. Huston and Annette Abbott Adams for Respondents.

THOMPSON (R. L.), J. — This is an original motion which was made in this court to recall the *remittitur* and assess the costs to the appellant, on the theory that the action is in the nature of an inverse condemnation suit, and that the owners of the property which is involved therein, are entitled to costs under the provisions of article I, section 14, of the Constitution of California, independently of the outcome of the litigation.

This suit was instituted by the plaintiffs, as the owners of land riparian to Fall River, to enjoin the defendant from diverting the water of that stream, and to secure damages for the appropriation thereof. The injunction was issued, and the plaintiffs secured damages in the sum of $20,000 for the taking of the water and the damaging of their property by the diverting of the stream. On appeal to this court, the judgment was reversed. (*Crum* v. *Mt. Shasta Power Corp.*, 117 Cal. App. 586 [4 Pac. (2d) 564].) Following the opinion of this court, a *remittitur* was issued directing the levying of· costs against the respondents pursuant to rule XXIII of the Supreme Court. In due time the motion

to recall and modify this *remittitur* was properly made. (*San Joaquin etc. Co.* v. *Stevinson,* 165 Cal. 540 [132 Pac. 1031].)

■ The sole question which is involved in this proceeding is whether the present action is a suit in eminent domain. If this is an action in eminent domain, then the owner of private property which is sought to be taken for public use is entitled to his costs, for the reason that payment for the value of the property taken or the damages resulting therefrom, would not amount to "just compensation" if it were reduced to the extent of the costs of suit. (*Oakland* v. *Pacific Coast Lumber Co.,* 172 Cal. 332 [Ann. Cas. 1917E, 259, 156 Pac. 468].) It is apparent that the nature of an action must be determined by the issues which are tendered. These issues will ordinarily be ascertained from a consideration of the pleadings as a whole. (*Woolsey* v. *Woolsey,* 121 Cal. App. 576 [9 Pac. (2d) 605].)

It is conceded this action was not originally a suit in eminent domain. The complaint primarily sought injunctive relief to prevent the diverting of the stream. The second cause of action therein contained, incidentally asked for damages to the plaintiffs' riparian land by virtue of the unlawful diversion of the water. The plaintiffs, however, assert that the defendant "converted said action into inverse condemnation, or eminent domain" by affirmatively alleging in its answer that the stream was diverted and the water taken for hydroelectric purposes for public use, and that this transformation of the nature of the action entitles them to costs regardless of the result of the litigation. Inverse condemnation is a novel term, which we do not find defined in the authorities. From the manner in which this term has been used, we may assume it means that even though an action is brought for some cause other than eminent domain, and issues are tendered by the answer or otherwise, which properly require a decision as to whether private property is taken or damaged for public use, the suit may nevertheless be treated as one in eminent domain. In other words, the term appears to have been used to mean that the converting of a suit of different nature into one of eminent domain amounts to inverse condemnation. Regardless of the application of this term, it is apparent that rule XXIII of the Supreme Court determines the right

to costs in the present action, unless this cause is an exception to the rule there stated by virtue of the fact that it has been converted into a suit of eminent domain.

In support of their claim that this action has been converted into a suit in eminent domain, entitling the plaintiffs to their costs, they rely on the following cases: *San Joaquin etc. Co.* v. *Stevinson,* 165 Cal. 540 [132 Pac. 1021] ; *San Diego Land etc. Co.* v. *Neale,* 88 Cal. 50, 67 [11 L. R. A. 604, 25 Pac. 977] ; *San Francisco* v. *Collins,* 98 Cal. 259 [33 Pac. 56] ; *Collier* v. *Merced Irr. Dist.,* 213 Cal. 554 [2 Pac. (2d) 790] ; *Oakland* v. *Pacific Coast Lumber Co.,* 172 Cal. 332 [Ann. Cas. 1917E, 259, 156 Pac. 468]. In each of these cases the right of condemning private property for public use was directly tendered by the issues contained in the pleadings. In the Collier case, *supra,* the court says: "The answer of respondent contained every element of a cross-complaint" which set up the right of eminent domain. In each of the other cases the complaint was drawn for the specific purpose of condemning private property for public use.

Having conceded this case was not originally an action in eminent domain, it follows that the plaintiff's motion must fail unless the averments of the answer have tendered issues which convert it into a suit necessarily involving principles of eminent domain. In a critical examination of the answer we are convinced the rights of eminent domain were neither directly nor indirectly involved. The answer denies that the lands of plaintiffs are riparian to Fall River. It specifically denies that the defendant took any water belonging to the plaintiffs or interfered with their riparian rights. It is then affirmatively alleged that the defendant is the owner of all the lands on both sides of Fall River from its confluence with Pit River up to a point on the first-mentioned stream above the diverting dam, penstock and canal, and that the only water which has been diverted and used by the defendant for hydroelectric power purposes, was by virtue of its lawful riparian rights. Assuming that the defendant did use more water than its reasonable correlative share of the stream would entitle it to consume, the pleadings do not tender an issue of partition of water between riparian owners thereof. Even if that issue were involved, it may not be said a suit for partition of water between riparian

owners has any proper relation to eminent domain, even though one of the riparian owners applies its reasonable correlative share thereof for manufacturing electric energy for sale to its customers and for use by the public. The answer does allege that the power plant is designed to use the entire output from the diversion of all of the waters of Fall River during certain seasons, and that the purpose of the power plant is to generate and sell electric energy "for the use of the public for light, heat and power purposes". It is also alleged that a certificate was procured from the Railroad Commission certifying to the necessity and public convenience of maintaining this hydroelectric power plant "for the public purpose hereinbefore mentioned". The use of the water by the defendant for hydroelectric purposes was specifically declared by the Supreme Court to be within its lawful riparian rights. (*Fall River Irr. Dist.* v. *Mt. Shasta Power Corp.*, 202 Cal. 56 [56 A. L. R. 264, 259 Pac. 444]; *Seneca Consol. Gold Mines Co.* v. *Great Western Power Co.*, 209 Cal. 206, 215 [70 A. L. R. 210, 287 Pac. 93].) The allegations of the answer with reference to the use of the water for public power purposes are clearly intended to furnish a lawful reason to prevent the enjoining of the operation of the plant in accordance with the demand of the complaint. These allegations were intended to avoid the damage which would result in enjoining the operation of the plant as was done in the case of *Joerger* v. *Mt. Shasta Power Corp.*, 214 Cal. 630 [7 Pac. (2d) 706], for the reason that it was there found the power plant was not devoted to public use.

The allegations of the answer may not be distorted into either a direct or an indirect admission that the defendant used or claims the right to appropriate plaintiffs' private water rights for public use. There are no allegations of appropriation of water rights by the defendant independent of its asserted lawful riparian rights.

In order to justify the injunction which was issued in this case, the plaintiffs insisted that a restraining order was necessary to prevent the defendant from acquiring water which might ripen into title by adverse possession. But the defendant specifically disclaimed any such purpose. This court held that under the pleadings and the facts of this case, no such title could be acquired.

Finally it is asserted that this court, in its opinion, recognized and declared that this proceeding constituted an action of inverse condemnation and eminent domain. In this regard we think the plaintiffs have misconstrued the language of the court. In support of the magnitude of the judgment for damages which was rendered in behalf of the plaintiffs, it was asserted on oral argument that damages should be estimated regardless of the value of the improvements in the nature of the dam which was constructed and which resulted in retaining the water in Pitville pool at the same level that it existed as a result of the natural flow of Pit River before the diversion of the stream, from which it appears that the plaintiffs were deprived of no water which they formerly enjoyed; that by virtue of this artificial improvement the riparian rights of the plaintiffs were not interfered with, and that therefore none of the water of Pit River belonging to the plaintiffs was actually taken. In response to this argument insisting that the damages should be estimated without regard to benefits which may. have accrued, this court did not state this was an action of inverse condemnation or eminent domain. The author of that opinion was convinced that the doctrine of eminent domain was not involved. But solely to meet the contention of the plaintiffs the court said: "*It is asserted* that damages should be estimated . . . regardless of the benefits," etc. We then said: "We are of the opinion the rule of excluding the value of improvements from an estimation of damages in *certain eminent domain proceedings* has no application to this case."

Since neither the pleadings nor the evidence adduced at the trial of this case necessarily involved a claim on the part of the defendant to a right to take private property for public use, the doctrine of eminent domain has no application. The costs were therefore correctly assessed pursuant to the provisions of rule XXIII of the Supreme Court.

The plaintiffs' motion to recall and modify the *remittitur* is denied.

Preston, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July, 1, 1932, and an application by respondents to have the cause heard in the Supreme

Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 1, 1932.

Preston, J., did not participate.