[Sac. No. 4765.  In Bank.—May 29, 1935.]

ANNA McARTHUR, Respondent, v. MT. SHASTA POWER CORPORATION (a Corporation), Appellant.

William B. Bosley, Thomas J. Straub, Chenoweth & Leininger, Athearn, Chandler & Farmer and Frank R. Devlin for Appellant.

Arthur C. Huston, Sr., Jesse W. Carter and Annette Abbott Adams for Respondent.

CURTIS, J.—This case and four others are companion cases, each having been instituted by a different plaintiff against the defendant, the Mt. Shasta Power Corporation. In each case the plaintiff, as owner of land located on Pittville Pool, sought to recover damages alleged to have been sustained by reason of the diversion of the waters of Fall River some two and one-half miles above the confluence of that river with Pit River. The waters of Fall River, after their diversion, are conducted by defendant to its power house, situated about seven miles below the confluence of said two rivers, where after their use for the purpose of generating hydro-electric power, they are returned to the natural channel of Pit River. All five of said actions were tried, and resulted in substantial damages in favor of the respective plaintiffs and against the defendant. It is admitted by both sides that the same factual situation exists in all of said actions. Two of said actions have been before this and the District Court of Appeal on three separate occasions: *Crum* v. *Mt. Shasta Power Corp.*, 117 Cal. App. 586 [4 Pac. (2d) 564], *Albaugh* v. *Mt. Shasta Power Corp.*, 117 Cal. App. 612 [4 Pac. (2d) 574], *Crum* v. *Mt. Shasta Power Corp.*, 124 Cal. App. 90 [12 Pac. (2d) 134], *Albaugh* v. *Mt. Shasta Power Corp.*, 124 Cal. App. 779 [12 Pac. (2d) 137], and *Crum* v. *Mt. Shasta Power Corp.* and *Albaugh* v. *Mt. Shasta Power Corp.*, 220 Cal. 295 [30 Pac. (2d) 30]. On the two occasions when the Crum and Albaugh cases were decided by the District Court of Appeal, a petition for a hearing of each of said cases was asked of this court, which petition was in each instance denied. We have, therefore, given the Crum and Albaugh cases consideration upon three separate occasions. We might here explain that when these two cases were first before the District Court of Appeal, as is shown by the decisions therein reported in volume 117 of California Appellate Reports, the main opinion of the court was rendered in the Crum case, followed by a short memorandum opinion in the Albaugh case. The same procedure was followed when they were before the court on the second occasion, as will appear by reference to the decisions therein reported in 124 California Appellate Reports. When the cases were before this court on the occasion of their second appeal, they were consolidated and one decision was rendered in the consolidated cases (220

Cal. 295). As before stated, the factual situation out of which these five controversies arose is practically the same in all five cases. Each plaintiff is the owner of lands fronting upon Pittville Pool, which is a mere enlargement of the bed of Pit River. The pool extends from Young's Falls in a southwesterly direction to a rock reef, a distance of about eight and one-half miles. It has a width of 145 feet. About 500 feet above this rock reef, Fall River, in its natural state, flowed into Pittville Pool, and, the plaintiff contends, contributed a substantial amount of water which was impounded in said pool. The basis of the complaint of the plaintiffs in said five actions is that by reason of the original flow of Fall River into Pittville Pool their lands located on Pittville Pool are riparian to Fall River, and that the diversion of the flow of Fall River from its natural channel before it reached Pittville Pool was an infringement upon their riparian rights. The facts in detail are fully set forth in the case of *Crum* v. *Mt. Shasta Power Corp.*, 117 Cal. App. 586 [4 Pac. (2d) 564], and it is not necessary for us to repeat them here.

Appellant rests its case upon the following propositions:

1. That the use which it makes of the waters of Fall River is a beneficial riparian use.

2. That respondent's lands are not riparian to Fall River and therefore she cannot complain of the use of the waters of Fall River by the appellant.

3. That if respondent's lands are riparian to Fall River, then appellant and respondent are opposite riparian owners and have correlative rights to the use of the waters of Fall River. In any controversy, therefore, arising between said parties as to an excessive use of the waters of said stream by one party as against the other, the remedy is not in an action for damages by the one complaining of said excessive use, but is for a division or apportionment of the waters of the stream, taking into consideration the reasonable needs of both.

4. That even if an action in damages will lie in favor of the respondent, the amount awarded is excessive.

Respondent's position is one of complete opposition to each and every one of these propositions. Her contentions are that appellant's diversion of Fall River, in so far as it affects respondent's rights in said stream, is wrongful;

that her lands are riparian to Fall River; that she has sustained serious injury by appellant's use of the waters of Fall River; that her remedy for such use lies in an action for damages, and that the damages awarded are not excessive.

In considering the contention of the appellant that the use which it makes of the waters of Fall River is a beneficial riparian use, it is important that we refer to the admitted fact that appellant is the owner of the bed and banks and all lands riparian to Fall River on each side thereof from a point therein above its diversion works to the confluence of said river with Pit River, and also the bed and banks and all land riparian to Pit River from a point above the junction of said two rivers down to a point some distance below its power house, where the waters of Fall River are returned back into Pit River, with the exception of one piece of land on Pit River, the riparian rights of which have been acquired by the appellant from the owners thereof for use by it in the generation of power at its power plant: and furthermore, that all water diverted by appellant from Fall River is diverted on appellant's said riparian lands, and is used by it for the generation of electric power and is returned to Pit River before it leaves appellant's riparian lands. The right of appellant to divert the waters of Fall River in the manner herein shown and to use the same in its said power plant for the purpose of generating electric power was before this court in the case of *Fall River Valley Irr. Dist.* v. *Mt. Shasta Power Corp.*, 202 Cal. 56 [259 Pac. 444, 56 A. L. R. 264], and it was there held that said use by appellant was a legitimate riparian use of the waters of Fall River. The same determination was reached by the District Court of Appeal in the case of *Crum* v. *Mt. Shasta Power Corp., supra.* There the court held (page 600) "that the appellant's use of the waters of Fall River was for proper and beneficial purposes".

On the second appeal of the Crum and Albaugh cases, *supra,* 220 Cal. 295, the character of appellant's use of the waters of Fall River was given consideration by this court. There is nothing to be found in that decision which would indicate a departure from the previous holding of the appellate court as to the riparian character of appellant's

use of the waters of said river. Some question arose in that case as to the construction to be placed upon the above quoted language of the appellate court, and in construing that language we said, "As we interpret the last quoted statement, all that was intended thereby was that the use of water for power purposes under a proper state of facts is a proper riparian use. The courts of this State have long recognized that a riparian owner in the proper exercise of his riparian rights may use the water as a motive power to propel machinery, subject only to the domestic uses of lower riparians. However, this does not mean that use of such water for power purposes gives any riparian owner any greater right than any other riparian use would give him." In the light of these judicial declarations as to the character of appellant's use of waters of Fall River, the question cannot be now regarded as an open one. For all purposes of this action it must be held that appellant's diversion and use of the waters of Fall River for power purposes as shown by the undisputed evidence in this case is in the exercise of its riparian rights in and to the waters of said river.

The second proposition advanced by appellant is that respondent's lands are not riparian to Fall River, and therefore she cannot complain of the use of the waters of said river by the appellant. Appellant, as we understand its position, concedes that if the respondent's lands are riparian to Fall River, then, if she sustains any legal injury by appellant's diversion and use of the waters of Fall River, she has just cause of complaint, and may protect her rights in said waters by some appropriate action. It is necessary for us, then, in the first instance to determine whether respondent's lands are riparian to Fall River. The claim of appellant that respondent's lands are not riparian to Fall River is based upon the fact that respondent's lands are located on Pittville Pool, some miles above the junction of Fall River and Pit River, and the contention of appellant that the waters of Fall River flow down stream when they reach Pittville Pool, and do not flow into or mingle with the waters of Pittville Pool. In the first trial of the Crum and Albaugh cases it was contended that the bed or bottom of Pittville Pool was some few feet lower at the upper end of the pool than it was at the junction of Pit River and

Fall River, and that the waters of Fall River, which are slightly colder than the waters of Pit River, displace the Pit River water at the bottom of the pool and thus create a subsurface current which finds its way upstream along the bed of the pool. The District Court of Appeal rejected this theory on the first appeal of the Crum and Albaugh cases, *supra,* 117 Cal. App. 586, 595 [4 Pac. (2d) 564]; 117 Cal. App. 612 [4 Pac. (2d) 574]. That court did hold, however, that "It seems more reasonable to believe that when the water of Fall River was poured into the reservoir called Pittville Pool, it circulated and mingled indiscriminately with the waters contributed thereto from all other sources, so as to equalize the temperature and form the *corpus* of a miniature lake which was impounded by the barrier of the rock reef down at its lower extremity" (page 595). From these facts the court concluded (page 597): "So long as the bulk of the water from Fall River remains impounded in Pittville Pool we may assume upon the reasoning of the last-mentioned case (*Turner* v. *James Canal Co.,* 155 Cal. 82 [99 Pac. 520, 132 Am. St. Rep. 59, 17 Ann. Cas. 823, 22 L. R. A. (N. S.) 401]) that plaintiff's land is riparian to Fall River." Upon the same page of the opinion the court further stated: "It must be conceded, however, that the same situation does not prevail in times of flood water, during which these two rivers rush down over the dam with a mighty velocity at a depth of many feet. It is apparent that under such conditions very little of the water of Fall River remains impounded in the pool. During this season when the flood water and current of Pit River carry Fall River water over the dam, the plaintiff's land is not riparian to Fall River. It follows that while the plaintiff's land may be riparian to Fall River during times of low water in the summer, it is not riparian to that stream during the season of flood water in the winter months." From this excerpt from the opinion of the District Court of Appeal in that case, as well as other direct and positive statements found in said opinion, there is no uncertainty as to the position of that court regarding the claim by the plaintiff in said action, that his lands in the summer months are riparian to Fall River. The decision in that case has become final, and the appellant therein, who is also the appellant in this case, made no attempt in this court to have the same set aside or modified. It seems rather late in the day for

it now to take a position antagonistic to the ruling of the District Court of Appeal in the Crum and Albaugh cases. However, the same question came before this court on the second appeal of the Crum and Albaugh cases, when we quoted with approval from the opinion in the first appeal of the Crum case and expressly held that the lands of Crum and Albaugh were riparian in the summer months to Fall River. The language used by us on that occasion and found on page 300 [220 Cal.] of the opinion is explicit and positive and consists of the following statement: ''This physical condition, according to plaintiffs' theory, makes their lands riparian to Fall River in the summer months, although their lands are located more than five miles from where the Fall River empties into the Pit River. We agree with plaintiffs that the evidence introduced on this trial, as well as the law of the case, as established on the prior appeals, fully establishes that Pittville Pool is a natural reservoir, which is filled with water in the summer months from both the Pit and Fall Rivers, and that in those months plaintiffs' lands are riparian to both streams. We are of the opinion that the evidence establishes that Fall River, in the summer months, in a state of nature, contributed a large quantity of water to this pool, which water mingled with and became an inseparable part of the *corpus* of the water in the pool. In other words, Pittville Pool is a miniature lake in the summer months, its waters in that period consisting of Pit and Fall River waters, mingled indiscriminately. We cannot add to what the District Court of Appeal said on this point on the prior appeal in the Crum case.'' Then follow extended quotations from the opinion of the District Court of Appeal in the Crum case, including the paragraph thereof hereinabove quoted. While, of course, none of the opinions in the Crum and Albaugh cases can be accepted as the law of the case in determining any question arising in this or the two other companion cases, yet, as we have before stated, these five cases involve the same state of facts, and under the principle of *stare decisis* the decisions rendered in the Crum and Albaugh cases are direct authority upon any question decided therein which may arise in the present action, or in the two companion cases which are now pending before us. From the legal principles established in the Crum and Albaugh cases as applied to the facts in the

present action, the question as to the riparian character of respondent's lands is no longer in any doubt. As respondent's lands are identical in their location with the Crum and Albaugh lands, it follows that her lands are riparian to Fall River during the summer months, and therefore she is entitled to complain of appellant's use of the waters of said river, if said use infringes upon her legal rights in said waters, as a riparian owner.

The third proposition advanced by the appellant is that if respondent has been injured in her legal rights by the diversion of the waters of Fall River by the appellant, her remedy is by an action for a division or apportionment of said waters, and not for damages sustained by reason of the excessive use of said waters by appellant. Like the two preceding questions to which we have given consideration, this question was before the appellate and this court in the first and second appeals in the Crum and Albaugh cases. The contention of appellant as to the nature of respondent's remedy finds support in none of the decisions rendered by either of said courts in the Crum and Albaugh cases. On the contrary, the decisions, both of the District Court on the first appeal and of this court on the second appeal, held that respondent's remedy was one in damages and not for apportionment. In *Crum* v. *Mt. Shasta Power Corp.*, decided by the District Court of Appeal, 117 Cal. App. 586, that court, on page 603 of its opinion, in discussing the remedies which the respondent therein might pursue in protection of his rights in that case, states its conclusion in the following language: ''We have held that plaintiff's land is technically riparian to Fall River because it borders on Pittville Pool, to which pond that stream contributes a substantial quantity of water during the dry season. It follows that a diversion of that river destroys the natural condition which makes the land bordering on Pittville Pool riparian to that stream. If the contribution of Fall River water to Pittville Pool is beneficial to the land of plaintiff then he is afforded a remedy for its withdrawal, by means of a suit for damages or for injunctive relief. He has seen fit to rely upon a suit for damages.

''The appellant contends that since the flow of Pit River is always adequate to keep the pool filled to a depth which results in a constant flow over the rock reef barrier, the

contribution of Fall River water is neither necessary nor beneficial to plaintiff's land. This is not necessarily true. Conditions may change. The removal of Fall River water may diminish the quantity or impair the quality of the water which is impounded in that pool. Assuming the evidence does adequately show that the water which is normally contributed to Pittville Pool is beneficial to the land of the plaintiff which is located thereon, the plaintiff would be entitled under the pleadings in this case to whatever actual damages he has suffered from the diversion of the stream.''

While that court did not, in its opinion, state the basis for its conclusion that the plaintiffs' remedy was an action for damages, on the second appeal of the Crum and Albaugh cases, this court gave further consideration as to the remedy which might be pursued by the plaintiffs in those actions and held that as a public use had attached to the waters of Fall River by the appellant's diversion and use of the same for the generation of electric power, action for apportionment of said waters would not lie. The language of this court used in said discussion is to be found in the first paragraph of our opinion in that case (220 Cal. 295, 297) and is as follows: ''A rehearing was granted in this case to give further consideration to two points discussed in our former opinion. The first point has to do with the proper interpretation of the case of *Joerger* v. *Mt. Shasta Power Corp.*, 214 Cal. 630 [7 Pac. (2d) 706], and the application of the rule of that case to the facts of this case. Upon further consideration we are of the opinion that the discussion of the Joerger case was not necessary to the opinion and may be stricken therefrom without in any way affecting the result. The opinions of the District Courts of Appeal in these cases have clearly established the law of the case to be that the plaintiffs are entitled to damages. To the discussion contained in our former opinion on this point, we add the following observation. Assuming, but not deciding, that defendant's use of the waters in exercise of its riparian rights, but constitutes an excessive use of the waters of Fall River, plaintiffs could not, as contended by defendant, secure an apportionment of said waters. This is so for the reason that a public use has attached to the entire flow of Fall River. If plaintiffs should bring an action for apportionment they would be immediately met with the de-

fense that a public use had attached to the entire flow. The same reasons that prevent the plaintiffs from securing an injunction in the present cases would prevent them from securing an apportionment.'' The statement in that opinion that a public use had attached to the waters of Fall River was predicated upon the undisputed evidence produced at the trial of said action. Practically the same evidence was before the court at the trial of this action, and upon which the court made an express finding, the effect of which was that a public use had attached to the waters of Fall River by the appellant's diversion and use thereof in its hydro-electric power plant.

There can be but one conclusion drawn from the foregoing facts and the law as applied to said facts in the two Crum and Albaugh appeals—and that conclusion is that the respondent's remedy in this action is not an action for the apportionment of said waters, but one in damages suffered by respondent by reason of appellant's diversion of the waters of Fall River.

This brings us to the fourth and final proposition or contention of the appellant, and that is that the amount of damages awarded respondent is excessive.

This question, in the light of the decisions in the Crum and Albaugh cases as applied to the facts in this case, presents a rather involved matter for determination. On the first appeal of the Crum and Albaugh cases the District Court of Appeal reversed the judgments in favor of the plaintiffs in said action and held that the award of damages in each of said actions was excessive. On the second appeal of these cases this court reversed the judgments therein in favor of the plaintiffs in said action, and remanded the cases for a new trial on the issue of damages alone in accordance with the views expressed in the opinion in that action. The evidence before the trial court in the trials of the Crum and Albaugh cases relative to the damages sustained by the plaintiffs in said actions by the diversion and use of the waters of Fall River was substantially the same as the evidence upon which the verdict of the jury was rendered in the present action. The award of damages herein, based upon acreage and value of the respective tracts of land involved in this and the Crum and Albaugh cases, is considerably less, proportionately, than the amount of

damages awarded to the plaintiffs in the Crum and Albaugh cases on the first trial thereof. On the first trial the jury in the Crum case awarded damages in the sum of $20,000, amounting to $172 per acre, and in the Albaugh case in the sum of $65,000, amounting to $162 per acre. (See decision Crum and Albaugh cases, 117 Cal. App. 586 [4 Pac. (2d) 564]; 117 Cal. App. 612 [4 Pac. (2d) 574].) In the present action the plaintiff's damages amounted to the sum of $32,500, or the equivalent of $109.44 per acre. We will not enter into a discussion as to whether the lesser proportional amount awarded in this case, as compared with the amounts awarded in the Crum and Albaugh cases, on the first trial thereof, renders the present award invulnerable to attack on the ground that it is excessive, but will pass to the consideration of other questions involving the judgment for damages rendered in the present action.

On the second trial of the Crum and Albaugh cases Crum's damages were fixed at the sum of $32,100, and Albaugh's at $93,300. In the course of the trials of these two cases the defendant in said actions offered a written stipulation to the effect that it "does hereby undertake and promise to maintain and operate the dam which it has heretofore constructed at the rock reef in the channel of said Pit River a short distance below the natural confluence therewith of Fall River, and to maintain the level of the water in said Pittville Pool substantially at its aforesaid natural level and not lower than the top of the aforesaid dam by means of its maintenance and operation of said dam and by discharging or causing to be discharged into said Pittville Pool so much of the water naturally flowing in said Fall River and its tributary, Tule River, as may be required for that purpose from time to time, so long as the defendant shall continue to divert water from Fall River above its natural confluence with Pit River, and does hereby irrevocably consent that the judgment to be entered herein shall require this defendant to maintain and operate said dam and to maintain the natural level of the water in said Pittville Pool as it has herein undertaken and promised to do." A copy of this stipulation in full is set out on pages 308 and 309 of the decision of this court in *Crum* v. *Mt. Shasta Power Corp., supra,* 220 Cal. 295. The trial court refused to admit this stipulation in evidence or to instruct

the jury in reference thereto. Upon appeal we held that it was beyond the power of the defendant corporation, without first securing the consent of the Railroad Commission, to agree to maintain the level of the water in Pittville Pool by a release of water from Fall River, if necessary, as a public use had attached to all the waters of Fall River which had previously been diverted by the defendant corporation. As to the agreement contained in said stipulation that the defendant corporation would always maintain said dam constructed by it at the rock reef in the channel of Pit River and that the judgment might contain a provision to that effect, this court held that it was within the power of the defendant corporation to make, and that it was error on the part of the trial court to refuse admission of that part of said stipulation. Our conclusion on this subject may be found on page 311 of our decision and is as follows:

"However, this reasoning does not apply to the second concession contained in the stipulation, that is, the guarantee to maintain the dam. Such a guarantee was well within the powers of the company to make and in our opinion should have been admitted by the trial court. The gravity of this error in refusing to permit the jury to consider this guarantee becomes apparent when the peculiar facts of this case are considered. The evidence shows that since the construction of the dam the flow of Pit River at all times has been more than sufficient to keep Pittville Pool at the level that existed before the diversion. A period of about ten years has elapsed since the construction of the dam, and during all that period the pool has been maintained at its old level. Plaintiff as far as quantity of water is concerned has failed to show any damage actual or prospective by reason of the diversion, provided the dam is maintained. This the defendant offered to do and offered that the judgment should so provide. It was error of a most serious nature to exclude from the jury's consideration this portion of the stipulation."

While the appellant, at the trial of the present action, made no offer of such, or a similar stipulation that it would maintain said dam at the rock reef as it did in the second trial of the Crum and Albaugh cases, it did, in paragraph III of its answer, after reciting the fact that it had constructed said dam or concrete barrier with operating gates

in the bed of Pit River at the rock reef, expressly agree to maintain the same at its own expense. The precise language of said agreement is set forth in its answer, being as follows: ''That said defendant agrees to and will maintain and operate at its own expense, said concrete barrier and said gates therein.'' While this agreement is not as full as that contained in the stipulation in the Crum and Albaugh cases, we can see little if any difference in the legal effect of appellant's obligation assumed in its answer as stated above and the obligation which it agreed to assume in the written stipulation offered by it at the second trial of the Crum and Albaugh cases. We have, therefore, practically the same state of facts before us as were involved in the second appeal in the Crum and Albaugh cases. We can see no reason why our determination of the present controversy should not follow the disposition of that appeal. By excluding said stipulation at the second trial of the Crum and Albaugh cases, the jury, of course, in arriving at the verdict did not take into consideration the fact that the appellant had erected said barrier and had agreed to maintain the same at its own expense. The witnesses, in fixing the damages sustained by the plaintiffs in said action, did not take into consideration the concrete dam with its operating gates, which to a large extent if not wholly maintained the water in Pittville Pool at the same level at which it stood prior to any diversion by the defendant of the waters of Fall River. The same situation existed in the trial of this action. Practically no attention was given to the fact that the appellant had erected said barrier and had agreed to maintain it. The witnesses, in testifying to the amount of respondent's damages, were not advised that they must take into consideration the presence of the dam constructed by appellant at the rock reef. The same may be said regarding the instructions to the jury. In fact, on the other hand, the court instructed the jury ''that the construction and maintenance of any dam or other structure by the defendant is not a defense to this action, even if it maintains the level of Pit River without the waters of Fall River to the same height or level as they were before the waters of Fall River were diverted''. The principal defense respondent makes to the giving of this instruction is that, while admitting that the construction and maintenance

of said dam may be shown in mitigation of her damage, it is not a defense to the action as a whole. We think this too narrow a construction to be placed upon the language used in the instruction. We hardly think the jury so understood it. On the other hand, as we view the action of the court in the giving of this instruction, without any explanation or limitation placed upon its language, the rights of the appellant were seriously prejudiced thereby. In fact, the attitude of the trial court was to totally ignore the fact that appellant had constructed and had agreed to maintain said dam, and that that fact was not a factor in the case in any way. Its action in this respect was in harmony and strict accord with its attitude at the second trial of the Crum and Albaugh cases, when it refused admission of the written stipulation of appellant to maintain said dam as constructed by it at the rock reef. We held this to be error, and reversed the judgments on that ground. We think the same action should be taken on the present appeal.

We held on the second appeal of the Crum and Albaugh cases that if the construction and maintenance of said dam would maintain the level of the water in Pittville Pool to the same height at which it was prior to appellant's diversion of the waters of Fall River, then the respondent's riparian lands on Pittville Pool sustained no damage by the acts of the appellant in diverting said waters of Fall River, so far as the quantity of water to which respondent is entitled is involved. We further held that the evidence in those cases showed that by reason of said diversion of Fall River, the waters of Pittville Pool were rendered stagnant, that the pool in summer months was covered with weeds, slime and moss, and that the waters thereof were so polluted that cattle refused to drink the same. Our views upon that subject were expressed as follows (page 312 [220 Cal.]) : "However, although it is true that under the facts of this case plaintiffs have not or will not be damaged as to the quantity of water in the pool, it does not necessarily follow that they have not been damaged in other respects. Under the California authorities, and under the law of these cases as enunciated on the former appeals, a riparian owner, even as against another riparian, is entitled not only to an undiminished flow of water, except as reduced by the reasonable use of other riparians and prior appropriators, but

also to a substantially unpolluted stream. The riparian owner is entitled not only to the same quantity of water, but also to the same quality of water, provided by nature in the stream. (*Crum* v. *Mt. Shasta Power Corp.*, 117 Cal. App. 586, at p. 610 [4 Pac. (2d) 564, 573].) We are of the opinion that the evidence in the present case offered on behalf of plaintiffs clearly shows that the quality of the water in Pittville Pool has been materially impaired by the diversion and by the construction of the dam. The evidence shows, without conflict, that the waters of Fall River have always been clear and pure, while the waters of Pit River have always been dark and murky. The evidence likewise shows that before the diversion the waters of Fall River rushed down into Pittville Pool with a minimum flow of 1,000 second-feet. The Fall River waters, as we have already held, mingled with the dark murky waters of Pit River to form the pool. The jury could have reasonably inferred that the Fall River waters freshened the water in the pool. Since the diversion, the freshening effect of the Fall River waters has been lost. Moreover, by the construction of the dam, obviously the flow of water through the crevice in the rock reef has been stopped, resulting in the Pit River water backing up. There was ample evidence introduced on behalf of plaintiffs to show that since the diversion the waters of Pittville Pool have become stagnant; that the pool in the summer months is now covered with weeds, slime and moss; and that a very undesirable odor now emanates from the pool, which is obnoxious to the senses for a distance of one-half mile from the water. There is also some evidence that since the diversion cattle will not drink the polluted water. There is ample evidence from which the jury could have inferred that the changed conditions were caused by the diversion and by the construction of the dam. It hardly need be added that if such changed conditions resulted in a material impairment of the value of plaintiffs' lands, plaintiffs may recover therefor.''

The foregoing statement correctly expresses our views respecting the issues now before us, and which are precisely like those determined by us in our former opinion from which said statement was taken.

■ Appellant contends that the question of pollution is not properly before us, and respondent contends that though the level of the pool may be kept at its original height by the construction of said dam at the rock reef, yet the quantity of water flowing into Pittville Pool has been so depleted by the diversion of the appellant that it is insufficient to meet the needs of the respondent and other riparian owners on Pittville Pool. These two contentions have each received consideration in our former opinion and in those of the District Court of Appeal in the Crum and Albaugh cases. They have each been held to be untenable, and we deem it a waste of time to enter into a further discussion of either of them.

■ It is further evident from what we have .said that neither at the second trial of the Crum and Albaugh cases, nor at the trial of this case, were the merits of the dam erected by appellant at the rock reef in Fall River determined by the court. In fact, the presence of the dam was to all intents and purposes ignored by the trial court at the trial of each of the cases. It has been assumed that its construction and maintenance in the manner heretofore described would maintain the level of Pittville Pool at its original height, but that fact has never been definitely determined by the court. In fact, at the second trial of the Crum and Albaugh cases, in connection with the stipulation offered by appellant, said appellant agreed that if the level of said pool by the construction of said dam was not maintained at its original height, the appellant would agree to release sufficient water from Fall River to keep the level of the pool at the height existing before the diversion of the waters of Fall River by appellant. We held, as a public use had attached to these waters of Fall River, that it was beyond the power of the defendant in those cases to make such concession without the consent of the Railroad Commission. We do not wish to be understood as foreclosing the parties hereto, in case of a further trial of this action, from litigating the effectiveness of said dam and operating gates, erected at said rock reef, to maintain the level of the water in Pittville Pool at its original height, without discharging therein a portion of the waters of Fall River.

As we view this case, all the issues herein have been determined, except the one issue of damages, and in the event of a retrial, the court will be limited to the determination of this one issue.

For the reasons expressed herein, the judgment is reversed, and the case is remanded for a new trial on the issue of damages alone, in accordance with the views set forth in this opinion. Each party to pay his own costs.

Thompson, J., Shenk, J., Waste, C. J., Spence, J., *pro tem.*, and Nourse, J., *pro tem.*, concurred.

Rehearing denied.